## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN ATKINS,

                Plaintiff

      v.

HARRISBURG POLICE BUREAU,

            Defendant

CIVIL ACTION NO. 1:20-CV-1844

(MEHALCHICK, J.)

### MEMORANDUM

Presently before the Court are two motions to dismiss[1] for lack of prosecution filed by Defendants Harrisburg Police Bureau ("HPB"), Christopher Auletta ("Auletta"), Erik Henry ("Henry"), Nathaniel Pucciarello ("Pucciarello"), and Duane Pyles ("Pyles") (collectively, "Defendants"). (Doc. 23; Doc. 29). On September 1, 2020, Plaintiff Kevin Atkins ("Atkins") filed a complaint against Defendants, as well as against John Does I, II, and III ("Doe Defendants"). (Doc. 1). For the following reasons, Defendants' motions to dismiss shall be **GRANTED**. (Doc. 23; Doc. 29).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Atkins's complaint. (Doc. 1). On September 3, 2018, at around 2:00AM, Atkins was driving on Seventh Street in Harrisburg when Atkins noticed a black Tahoe with tinted windows behind him. (Doc. 1, ¶¶ 11-12). A few blocks later, two white males, later identified in the complaint as Auletta and Henry, exited the Tahoe,

---

[1] Defendants filed a motion to dismiss for lack of prosecution on February 14, 2025, along with an accompanying brief in support. (Doc. 23; Doc. 24). On March 25, 2024, Defendants filed a materially identical motion to dismiss and accompanying brief in support. (Doc. 29; Doc. 30). Because the motions are materially identical, the Court will treat them as one motion.

approached Atkins's vehicle while he was stopped at a stop sign, and told him to turn off his vehicle. (Doc. 1, ¶ 13). Neither man wore a badge, and neither identified himself as a police officer. (Doc. 1, ¶ 14). Atkins alleges he feared the men were robbing him and sped off. (Doc. 1, ¶ 15).

The Tahoe followed Atkins, who eventually exited his vehicle and attempted to run away on foot. (Doc. 1, ¶ 16). Auletta and Henry caught up with Atkins and allegedly began to assault him. (Doc. 1, ¶ 17). Pucciarella and Pyles then arrived at the scene and allegedly also began to assault Atkins. (Doc. 1, ¶ 17). Atkins alleges the officers punched him in the face and chest and used tasers on him. (Doc. 1, ¶ 20). After, Atkins received treatment for injuries and abrasions at Holy Spirit Hospital. (Doc. 1, ¶ 24).

Atkins alleges that the officers stopped him because they "accused" him of having a non-functioning headlight and driving while intoxicated and further avers that such a stop was discriminatory and a result of racial profiling. (Doc. 1, ¶¶ 18-19). Following this incident, Atkins was charged with aggravated assault, attempting to elude an officer, flight to avoid apprehension, driving under the influence, possession, and reckless driving. (Doc. 1, ¶ 26). Atkins contends that Defendants "prepared police paperwork intentional [sic] misrepresenting the events that led to the arrest of Atkins." (Doc. 1, ¶ 27).

Atkins filed the instant complaint on September 1, 2020, alleging violations of his Fourth and Fourteenth Amendment rights. (Doc. 1). This Court stayed this mater on December 2, 2020 pending resolution of Atkins's criminal charges. (Doc. 14). On November 12, 2024, Atkins's attorney informed this Court of his intent to withdraw his representation of Atkins due to irreconcilable differences. (Doc. 21). As a result, Atkins is now representing himself *pro se*. Defendants filed the first motion to dismiss for lack of prosecution on February

14, 2025. (Doc. 23). Atkins has not responded to the motion to dismiss, despite this Court ordering him to do so. (Doc. 27). Defendants filed a second identical motion to dismiss on March 25, 2025. (Doc. 29). Atkins again failed to respond, despite a second Court Order requiring him to do so. (Doc. 31). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition.

## II.    Legal Standard For Rule 41(b) Motion to Dismiss

Federal Rule of Civil Procedure 41(b) provides that an action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Further, the rule permits *sua sponte* dismissals by the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988) (same). "The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630–31; *see also Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992). Specifically, a plaintiff's failure to comply with a court order constitutes a failure to prosecute his action, and therefore his action is subject to dismissal pursuant to Fed. R. Civ. P. 41(b). A court's decision to dismiss for failure to prosecute is committed to the court's sound discretion and will not be disturbed absent an abuse of discretion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). In evaluating whether an action should be dismissed for failure to prosecute, a court must balance six factors:

> "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party ... was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense."

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

The *Poulis* factors are not "a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation ...." *Mindek*, 964 F.2d at 1373. No one factor is determinative, and not all of the *Poulis* factors must be met to warrant dismissal. *Mindek*, 964 F.2d at 1373; *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). Instead, the decision must be made in the context of the court's extended contact with the litigant. Dismissal for failure to prosecute is appropriately labeled a "drastic sanction," however, because it is "deemed to be an adjudication on the merits, barring any further action between the parties." *Sebrell ex rel. Sebrell v. Phila. Police Dep't*, 159 F. Appx. 371, 373 (3d Cir. 2005) (not precedential) (citing *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992); Fed. R. Civ. P. 41(b)). In light of this framework, the undersigned finds that a careful assessment of the *Poulis* factors in the case at bar weighs heavily in favor of dismissing this action.

## III. DISCUSSION

### A. ATKINS'S PERSONAL RESPONSIBILITY

Looking to the *Poulis* factors, the Court finds that a consideration of the first factor, the extent of the party's personal responsibility, shows that the delays in adjudicating the instant motion to dismiss are primarily attributable to Atkins. Because Atkins is a *pro se* litigant, he is solely responsible for prosecuting his claims. *See Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 920 (3d Cir. 1992). "As a general rule, a *pro se* litigant is responsible for his failure to comply with court orders." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (not precedential); *see also Emerson*, 296 F.3d at 191; *Winston v. Lindsey*, Civ. No. 09-224, 2011 WL 6000991, at *2 (W.D. Pa. Nov. 30, 2011) (concluding that a *pro se* litigant "bears all of the responsibility for any failure to prosecute his claims"). Atkins has neglected to litigate this

action and failed to file a brief in opposition to Defendants' pending motion to dismiss, as required by the Local Rules and as so ordered by the Court. *See Lookingbill*, 2015 WL 4077999, at *4. After Atkins's state court conviction, counsel for Atkins voiced his intent to withdraw due to irreconcilable differences. (Doc. 21). On November 15, 2024, the Court ordered a 60 day stay in order to allow Atkins to proceed *pro se* or retain new counsel, which he did not do. (Doc. 22). On February 19, 2025, this Court directed Atkins to file a brief in opposition to Defendants' motion. (Doc. 25). On February 24, 2025, Atkins was again directed to file an opposition brief on or before February 28, 2025. (Doc. 27). Atkins did not do so. Defendants filed a second identical motion to dismiss on March 25, 2025. (Doc. 29). Atkins again failed to respond prior to the deadline requiring him to do so on April 8, 2025. (Doc. 31). The Court directed Atkins to respond by April 28, 2025 in an Order dated April 14, 2025. (Doc. 31). As of the date of this Memorandum Opinion, Atkins has failed to file a brief in opposition to either motion to dismiss, comply with court orders, or communicate with this Court about his failure to file his brief in opposition. Accordingly, the first *Poulis* factor weighs in favor of dismissal.

### B. PREJUDICE TO DEFENDANTS

As for the second *Poulis* factor, a finding of prejudice does not require "irremediable harm." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994). Rather, "the burden imposed by impeding a party's ability to [effectively prepare] a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

Here, the Court finds that Atkins's failure to engage with litigating this action, comply with court orders, and adhere to directives to respond to the pending motions, wholly frustrates and delays resolution of this case. Going forward, such failure to litigate would prejudice Defendants, who, without timely responses by Atkins, could not seek a timely resolution of the claims against them. *See Vessio v. Saw Creek Ests. Cmty. Ass'n, Inc.*, No. CIV.A. 3:13-2068, 2014 WL 6065924, at *5 (M.D. Pa. Nov. 6, 2014) (finding the second *Poulis* factor favors dismiss when a plaintiff failed to engage in litigating certain claims "other than to repeatedly request extensions of time to respond to the instant motion to dismiss"); *Azubuko v. Bell National Organization*, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal). Accordingly, the undersigned finds that the second *Poulis* factor weighs in favor of dismissal.

C.    HISTORY OF DILATORINESS

Turning to the third *Poulis* factor, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874; *see also Emerson*, 296 F.3d at 191 (per curium) (finding a history of dilatory conduct where the plaintiff repeatedly requested stays and failed to comply with court-mandated deadlines). Conversely, "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) (citation omitted). In deciding whether a history of dilatory conduct exists, this Court must evaluate "a party's problematic acts ... in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875. Here, the Court has afforded Atkins a reminder to seek new counsel, comply with Local Rules and deadlines, and has ordered Atkins to respond to Defendants' motions more than once, offering multiple

extended deadlines to do so. (Doc. 25; Doc. 27; Doc. 31). Atkins has failed to timely file an opposition brief despite reminders of his duty to do so on multiple occasions. ((Doc. 25; Doc. 27; Doc. 31). Additionally, Atkins has not communicated with the Court since his attorney expressed his intention to withdraw as counsel in November 2024. (Doc. 21). Accordingly, Atkins's actions demonstrate a history of dilatoriness that weighs in favor of dismissal.

### D.    WILLFUL CONDUCT OR BAD FAITH

The fourth *Poulis* factor requires the Court to consider whether Atkins's conduct reflects mere inadvertence or negligence, as opposed to "strategic," "intentional or self-serving behavior." *Adams*, 29 F.3d at 875-76. "Under this factor, the District Court must consider whether the conduct was the type of willful or contumacious behavior which [can be] characterized as flagrant bad faith." *Briscoe*, 538 F.3d at 262 (quotation omitted). At this point in the case, Atkins has failed to comply with the Court's instructions directing him to take specific actions in this case and advising him how to do so. The Court is thus compelled to conclude that Atkins's actions are not accidental or inadvertent, but rather reflect an intentional disregard for the Court's directives and this case. *See Gilyard v. Dauphin Cty. Work Release*, No. 10-1657, 2010 WL 5060236, at *2 (M.D. Pa. Dec. 6, 2010). Thus, the fourth *Poulis* factor weighs in favor of dismissal.

### E.    AVAILABILITY OF ALTERNATIVE SANCTIONS

The fifth *Poulis* factor examines the effectiveness of sanctions other than dismissal. 747 F.2d at 868. Generally, "sanctions less than dismissal [are] ineffective when a litigant, such as [Shehadeh], is proceeding *pro se*." *See Lopez*, 435 F. App'x at 116; *Emerson*, 296 F.3d at 191 (per curium); *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012) ("This case presents such a situation where the plaintiff's status as a *pro se* litigant

severely limits the ability of the court to utilize lesser sanctions to ensure that this litigation progresses in an orderly fashion."). Under the instant circumstances where the Court is faced with the lack of cooperation on the part of the individual who brought this action, the only appropriate sanction is dismissal. Otherwise, the case would linger indefinitely on the Court's docket. Atkins is proceeding *pro se* but not in *forma pauperis*. Therefore, it is possible that monetary sanctions, including attorney's fees and costs, would be an effective sanction in this case. However, Atkins's failure to comply with the Court's orders leads to an inference that further orders to him would not be effective. *See Vessio*, 2014 WL 6065924, at *8 (finding that the fifth *Poulis* factor weighs in favor of dismissal when a *pro se* litigant has failed to comply with other court orders). In this case, the determination of whether alternative sanctions would be effective weighs slightly in favor of dismissal given Atkins's failure to communicate with this Court or abide by orders.

### F.    MERITORIOUSNESS OF ATKINS'S CLAIMS

The final *Poulis* factor asks the Court to consider the meritoriousness of Atkins's claims against Defendants. 747 F.2d at 868. A claim is deemed meritorious when "the allegations of the pleadings, if established at trial, would support recovery by plaintiff ...." *Poulis*, 747 F.2d at 870. "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263 (citing *Poulis*, 747 F.2d at 869-70).

In his initial complaint, Atkins alleges claims of Fourth and Fourteenth Amendment violations related to the traffic stop and his subsequent assault and arrest. (Doc. 1). As an initial matter, the Court must acknowledge that Atkins's complaint is difficult to decipher, and thus, it is difficult to ascertain the meritoriousness of his claims. He asserts Count One: a

standalone excessive force claim; Count Two: a "supplemental" § 1983 claim in which he alleges "conspiracy" to use excessive force and violate his rights but does not mention § 1985, the federal conspiracy statute; Count Three: a bystander liability claim for Defendants' failure to intervene in the alleged excessive force or discrimination; Count Four: a claim against the City of Harrisburg for maintaining a policy and practice of violating the Fourth and Fourteenth Amendments; and Count Five: *Respondeat Superior* against the City of Harrisburg, without mention of a cause of action. (Doc. 1). Atkins also mentions, in passing and without further explanation, malicious prosecution and false arrest. (Doc. 1, ¶ 31). The Court considers the sum of these allegations to make up two primary types of claims: Fourth Amendment excessive force claims arising out of his alleged assault and Fourteenth Amendment discrimination claims arising out of Defendants' decision to conduct the traffic stop. Defendants argue that each claim is meritless. (Doc. 24, at 6).

First, the Court will consider the merit of Atkins's excessive force claims. The Fourth Amendment governs a claim that law enforcement officers used excessive force in the course of making an arrest. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."). To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show: (1) that a seizure occurred; and (2) that the use of force was objectively unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Here, Atkins acknowledges in his complaint that he fled from officers in his vehicle and again on foot. (Doc. 1, ¶¶ 15-16). The Court notes that Atkins has pled that he suffered injuries as a result of the arrest and takes seriously his accusations of assault. (Doc. 1, ¶ 24). However, the determination of reasonableness allows for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Brogan v. Tunkhannock Twp.*, 302 F. Supp. 3d 670, 676 (M.D. Pa. 2018) (quoting *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865). Considering that Atkins was fleeing from the scene both in his car and on foot, and further, that courts may also take note of the fact that during arrests, rapidly evolving situations may leave open the possibility that the person subject to the police action is violent or dangerous or possibly armed, the Court cannot say that Defendants' actions were objectively unreasonable. *See Hill v. Havens*, No. 4:18-CV-00212, 2018 WL 4184316, at *2 (M.D. Pa. Aug. 31, 2018) (dismissing excessive force claims based upon an officer's assault of a suspect because suspect was attempting to flee), *case dismissed*, No. 19-1707, 2019 WL 4862156 (3d Cir. May 21, 2019); *see also Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 148 (3d Cir. 2013) ("we cannot say that the use of restraints was objectively unreasonable in light of Albert Gunter's extreme resistance").

Second, Atkins also conclusively alleges that Defendants discriminated against him based upon his race, which this Court interprets as Atkins's intent to assert a violation of the Fourteenth Amendment Equal Protection Clause. (Doc. 1, ¶ 19). The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Equal Protection does not require that all

persons be treated alike; instead, a plaintiff must allege that the differential treatment from those similarly situated was unreasonable or involved a fundamental interest or individual discrimination. *See Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983). Here, Atkins asserts he was discriminated against on the basis of race. (Doc. 1, ¶ 19). However, he does not allege any facts from which it can reasonably be inferred that he was treated differently than other similarly situated individuals, a necessary element of an equal protection claim. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2005). Accordingly, the complaint fails to state an Equal Protection claim upon which relief may be granted.[2]

---

[2] Because Atkins fails to allege a constitutional violation, his claims predicated on such violations also demonstrate merits deficiencies. Nevertheless, this Court will briefly address them here. First, his allegations do not provide or point to any facts that would establish a policy or practice of deliberate indifference to constitutional violations, but instead, he makes broad, conclusory statements that simply serve to list elements of the relevant legal claim. *See Hadesty v. Rush Twp. Police Dep't*, No. 3:14-CV-2319, 2016 WL 1039063, at *13 (M.D. Pa. Mar. 15, 2016) (finding that a plaintiff failed to allege municipal liability against city and city police department). He has not pointed to an official policy or practice or outlined customary course of conduct that led to excessive force, nor does he identify a final decision maker, all necessary elements of a police or practice claim. *Eiswerth v. Lackawanna Cnty. Sheriff's Dep't*, No. 3:24-CV-01214, 2025 WL 510971, at *7-8 (M.D. Pa. Feb. 14, 2025) (listing elements of a policy, practice or custom claim). Thus, he has not shown a likelihood of success on the merits of his policy or practice claim. Next, in order to prevail on a failure-to-intervene claim, the plaintiff must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was 'a realistic and reasonable opportunity to intervene.'" *Knight v. Walton*, No. 2:12CV984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002)) (citation omitted). Similarly, to state a cause of action under both § 1985(2) and § 1985(3), the plaintiff must adequately plead an unconstitutional conspiracy. *Bakhtiari v. Spaulding*, No. 1:17-CV-00016, 2017 WL 2778524, at *9 (M.D. Pa. June 27, 2017). "The essence of a conspiracy is an agreement." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989); *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 2015 (3d Cir. 2008) (providing that to constitute a conspiracy, there must be a meeting of the minds). Nonetheless, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57. Atkins makes no allegations of a specific agreement

Having found that Atkins fails to sufficiently plead a violation of the Fourth or Fourteenth Amendment, the Court finds that the sixth *Poulis* factor weighs in favor of dismissal.

G.    BALANCING OF *POULIS* FACTORS

To reiterate, when weighing the *Poulis* factors, there is no "magic formula" or "mechanical calculation" that automatically warrants dismissal. *Briscoe*, 538 F.3d at 263. Quite the contrary, the Court is guided by the Third Circuit's warning that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware*, 322 F.3d at 222; *see also Mindek*, 964 F.2d at 1373. Here, on balance, the *Poulis* factors weigh heavily in favor of dismissal of this action. For these reasons, it is appropriate that the complaint be dismissed for failure to prosecute without further leave to amend. *See Stanley*, 2014 WL 4546530, at *5. Accordingly, Atkins's complaint shall be **DISMISSED**. (Doc. 1).

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are deemed unopposed and will be **GRANTED.** (Doc. 23; Doc. 29). Atkins's complaint is **DISMISSED** with prejudice for failure to prosecute. (Doc. 1). The Clerk of Court shall **CLOSE** this matter.

An appropriate Order follows.

BY THE COURT:

Dated: June 13, 2025                      *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**

---

among Defendants to violate his rights. (Doc. 1). Therefore, he has not sufficiently pleaded a conspiracy claim.